Dear Sirs:
We received your requests for an opinion on behalf of the Union Parish Police Jury. You raise the following issues regarding the Union Parish Detention Center:
 1. Is the Union Parish Detention Center Commission required by law to continue to operate the Detention Center even though there has never been a tax passed to fund the operations as per La.R.S. 15:850.5?
 2. Can the Union Parish Detention Center charge a booking or administrative fee to the particular arresting agency for each arrestee brought to the Detention Center by it on a violation of a state criminal statute?
 3. Can the Union Parish Detention Center charge a booking or administrative fee to the arresting agency for each arrestee brought to the Detention Center by it on a violation of a local or municipal ordinance?
 4. Can the Union Parish Detention Center receive reimbursement from a municipality for the housing of persons arrested by municipal law enforcement officers for violation of a state criminal statute? If so, is there a maximum daily fee for housing such a person?
 5. Can the Union Parish Detention Center be reimbursed from a municipality for the housing of persons arrested by municipal law enforcement officers for violating a city or municipal ordinance? If so, is there a maximum daily fee which may be charged for housing such person?
 6. Can the Union Parish Detention Center seek a percentage of the monies received into the criminal court fund or any other fund from the payments of fines and costs by persons who plead guilty or are convicted of any offense, including traffic offenses, in the Union Parish District Court as reimbursement for the housing of inmates in the Union Parish Detention Center?
 7. Is there any state law which provides funding to parishes, sheriffs, or detention centers for the housing of inmates in facilities in other parishes as a result of overcrowding, safety precautions, or other similar reasons?
1. Is the Union Parish Detention Center Commission required by law to continue to operate the Detention Center even though there has never been a tax passed to fund the operations as mentioned in La.R.S. 15:850.5?
La.R.S. 15:850.1 provides that the governing authority of Union Parish may create, establish, and construct a centralized, single parish jail and prison for the purpose of providing for the maintenance and upkeep of all persons lawfully incarcerated in Union Parish. This jail and prison is known as the Union Parish Detention Center. La.R.S. 15:850.6 actually prohibits the incarceration of any person overnight in Union Parish in any facility other than the Union Parish Detention Center.
Pursuant to La.R.S. 15:850.5, the expenses or costs of the operation and maintenance of the Union Parish Detention Center, including salaries, wages, facility operating costs, and the feeding and maintenance of prisoners, shall be paid monthly by the Union Parish Police Jury treasurer upon approval of such by the Union Parish Detention Center Commission. The payments are to be made out of the funds derived from special taxes voted, levied, and collected, or budgeted for that purpose.
You indicate in the request that a tax has not been levied to fund the operation of the center. It is our understanding that the funds for operation of the center have been budgeted by the police jury. The statute does not mandate that the funds be derived from a special tax. The statute provides that funds shall be derived out of a tax or budgeted by the police jury. Thus, the center may operate without its funds being derived out of a special tax. The governing authority created and established the center and commission pursuant to La.R.S. 15:850.1, et seq. We believe the Commission is obligated to operate the center even though the funds used to operate it are not derived from a special tax. The statute does not mandate so.
2. Can the Union Parish Detention Center charge a booking or administrative fee to the particular arresting agency for each arrestee brought to the Detention Center by it on a violation of a state criminal statute?
La.R.S. 15:704 provides that the sheriff shall be the keeper of the public jail of his parish. La.R.S. 15:850.4 specifically delegates the Union Parish Detention Center Commission as the keeper of the Union Parish Detention Center and specifically relieves the sheriff of that duty. Our jurisprudence dictates that the sheriff, as keeper of the parish jail, must accept for incarceration all persons charged with violating a state criminal statute. Thus, the Union Parish Detention Center must accept for incarceration all persons charged with violating a state criminal statute. Amiss v. Dumas 411 So.2d 1137 (La.App. 1stCir. 1982). See also Attorney General Opinions 00-432, 90-17, 90-427, and 89-234. Accordingly, the Union Parish Detention Center may not charge a fee to the arresting agency for booking a person who is charged with violating a state criminal statute.
We do point out that La.R.S. 15:304 provides in pertinent part as follows:
 All expenses incurred in the different parishes of the state . . . by the arrest, confinement, and prosecution of persons accused or convicted of crimes, their removal to prison, the pay of witnesses specifically provided for by law, jurors and all prosecutorial expenses whatever attending criminal proceedings shall be paid by the respective parishes in which the offense charged may have been committed . . . The expenses shall be paid by the parish treasurer or by the city of New Orleans after an account of the expenses shall be duly certified to be correct by the presiding judge and the clerk of court.
An earlier version of this statute was interpreted by the Louisiana Supreme Court in State v. Mejia, 197 So.2d 73 (La. 1967). The court concluded that the parish where the crime was committed must pay the expenses, wherever incurred, in connection with the case. The case involved a violation of a state criminal statute wherein the defendant successfully moved for a change of venue. The crime was committed in St. Mary Parish but the case was ultimately tried in East Baton Rouge Parish. The parish where the crime was committed was responsible for the expenses incurred in the case and had to reimburse the other parishes involved for their expenses.
3. Can the Union Parish Detention Center charge a booking or administrative fee to the arresting agency for each arrestee brought to the Detention Center by it on a violation of a local or municipal ordinance?
Although the keeper must accept all persons charged with violating a state criminal statute, the keeper is under no obligation to do so for municipal violations. Amiss, supra. As such, the keeper may charge the arresting agency a booking fee for those charged with violating a local or municipal ordinance. See also Attorney General Opinion No. 01-132.
La.R.S. 15:850.6 mandates the incarceration of any person overnight in Union Parish be in the Detention Center. This statute, in our opinion, creates a different situation than that in Amiss because the municipalities have no choice. A person who is to be incarcerated overnight in Union Parish must be incarcerated in the Detention Center. Therefore, it is our opinion that the Detention Center must also accept for incarceration those persons violating a local or municipal ordinance and it cannot charge the arresting agency for such. The Detention Center may, of course, seek recourse with the legislature.
4. Can the Union Parish Detention Center receive reimbursement from a municipality for the housing of persons arrested by municipal law enforcement officers for violation of a state criminal statute? If so, is there a maximum daily fee for housing such a person?
In response to this question, we once again point out that the Union Parish Detention Center Commission is the keeper of the Union Parish Detention Center. As keeper, it must accept for incarceration all persons charged with violating a state criminal statute. It is responsible for the expenses of establishing, maintaining and operating the jail and feeding, clothing, and medically treating the prisoners.Amiss, supra. As such, it is not entitled to reimbursement from a municipality for the housing of persons charged for violating a state criminal statute.
5. Can the Union Parish Detention Center be reimbursed from a municipality for the housing of persons arrested by municipal law enforcement officers for violating a city or municipal ordinance? If so, is there a maximum daily fee which may be charged for housing such person?
As discussed previously, the Union Parish Detention Center Commission, because of the language in La.R.S. 15:850.6, must also accept for incarceration those persons charged with violating a municipal ordinance.
6. Can the Union Parish Detention Center seek a percentage of the monies received into the criminal court fund or any other fund from the payments of fines and costs by persons who plead guilty or are convicted of any offense, including traffic offenses, in the Union Parish District Court as reimbursement for the housing of inmates in the Union Parish Detention Center?
La.R.S. 15:571.11 establishes a criminal court fund for each of the district courts. It provides that all fines and forfeitures imposed by district courts and district attorneys and conviction fees in criminal cases, etc. shall be paid into the treasury of the parish in which the court is situated and deposited in the criminal court fund. Upon a motion by the district attorney and approval of the district judge, the fund may be used to defray expenses of the criminal court of the parish. The statute specifically provides that sheriffs throughout the state shall retain 12% of the amount of fines collected. This amount goes into the particular sheriff's general fund.
Although the Union Parish Detention Center Commission, by statute, assumes the position of keeper of the Union Parish Detention Center and relieves the Sheriff of Union Parish of that duty, the law does not provide for the Union Parish Detention Center Commission to receive a portion of the monies received by the sheriff pursuant to this statute. The Sheriff of Union Parish is not relieved of all of his duties; he is only relieved of his duty of keeper of the parish jail. La.R.S. 15:571.11
does, however, provide that one half of any surplus remaining in the fund on December 31st of each year shall be transferred to the parish general fund. Thus, the Union Parish Detention Center may seek appropriations of such funds, assuming there are surplus funds remaining at the end of the year, from the criminal court fund since funding for the center is budgeted by Union Parish. Additionally, the Center could seek legislative changes to provide for receipt of a portion of the fines collected and deposited in the criminal court fund.
7. Is there any state law which provides funding to parishes, sheriffs, or detention centers for the housing of inmates in facilities in other parishes as a result of overcrowding, safety precautions, or other similar reasons?
You question the possibility of receiving funding for housing inmates from other parishes due to overcrowding or other safety reasons. La.R.S. 15:706 addresses the transfer of prisoners to a jail of another parish. In sum, it provides that the sheriff of the parish maintaining and keeping a prisoner or prisoners may transfer any prisoner, due to a security or health risk, to the jail of any other parish by written contract with the sheriff of the other parish. The sheriff to whom the transfer of the prisoner is made shall receive the same compensation authorized by law for the keeping and feeding of prisoners, which shall be paid by the parish transferring the prisoner. Therefore, the Union Parish Detention Center Commission is entitled to be compensated for housing out-of-parish prisoners pursuant to this statute.
We trust that this adequately responds to your request. If you have any questions whatsoever, please do not hesitate to contact our office.
With kindest regards,
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: __________________________ TINA VICARI GRANT Assistant Attorney General
RPI:TVG:crt